UNITED STATES

v.

**Sergeant Rolando B. PANSOY, FR 561–98–2001, United States Air Force.**

**ACM S25160.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 24 Dec. 1980.

Decided 8 July 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain G. Michael Lennon.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before EARLY, MILES and KASTL, Appellate Military Judges.

## DECISION

KASTL, Judge:

We hold valid a search by a military exchange store detective, finding that: (a) for purposes of the search, she was not an agent of the United States acting in a governmental capacity; and (b) in any event, the search was permissible because the accused had no reasonable expectation of privacy as to this property.

### Facts

Mrs. Carrie Bowers is employed as a security inspector for the Army and Air Force Exchange Service (AAFES) at Clark Air Base, Republic of the Philippines. While working at the Four Seasons store one day, she became suspicious of the accused, who was shopping.[1] She observed him wheel a cart to central checkout and pay for two

1. Mrs. Bowers observed a wagon box in the stockroom and assumed its contents were to be assembled and displayed. She noted also that another wagon was already on display in the Exchange. She knew that empty boxes for items already displayed are stored in a different

boxes, purportedly containing a barbecue grill and a child's wagon. She then heard the cashier advise the accused to pass through the merchandise control security checkpoint, but he exited the store without doing so. The security checkpoint procedure was routinely required for all large purchases. Mrs. Bowers followed him out the door to his car in the Exchange parking lot. The box supposedly containing the barbecue grill was still in the shopping cart; the second box already was in the automobile trunk, which was still open. Identifying herself as an AAFES security guard, she explained that all packages must be inspected and asked if she could check these two items. The accused agreed,[2] and Mrs. Bowers opened the grill box and found it filled with blank cassette tapes. She then requested the accused to remove the second box from his automobile and accompany her to the Exchange manager's office. Security Police arrived and opened the second box, which also was filled with cassette tapes.

The accused subsequently was tried by special court-martial, with members, for attempting to steal 448 cassette tapes, valued at $1,618.00, a violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880. Despite his pleas, he was found guilty and sentenced to a bad conduct discharge, confinement at hard labor for three months, forfeiture of $100.00 per month for three months, and reduction to the grade of E–1.

At trial, the defense moved to suppress the two boxes of tapes under Military Rule of Evidence 311 on the basis that this was an unlawful search by an agent of the United States acting in a governmental capacity.[3] The military judge denied the motion.

*Search by Exchange Employee*

The first issue we address is the character of the search: Was it a private search, or was there sufficient governmental action to trigger Mil.R.Evid. 311 and the Fourth Amendment?

Our analysis begins with *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). There, the Supreme Court held that the exclusionary rule, designed to enforce the Fourth Amendment, is a limitation upon the Government only; evidence secured by *private* searches need not be barred from use in a criminal trial. Such is the military rule as well. *United States v. Seiber*, 12 U.S.C.M.A. 520, 31 C.M.R. 106, 109 (1961). Concededly, the line

---

area. Later, she observed the accused talking to Mr. G. and Mr. L., both store employees. After awhile, Mr. G. went into the stockroom area while the accused waited. Mr. G. brought out a shopping cart containing a barbecue grill box and a child's wagon box, and gave them to the accused. The wagon box in the accused's possession appeared to be the same box which Mrs. Bowers had noticed was empty earlier in the day.

2. Because of our disposition of this case, we do not address the issue of the accused's consenting to Mrs. Bowers opening the box.

3. In relevant part, Military Rule of Evidence 311 provides:
   (a) *General rule.* Evidence obtained as a result of an unlawful search or seizure made by a person acting in a governmental capacity is inadmissible against the accused if:
      (1) *Objection.* The accused makes a timely motion to suppress or an objection to the evidence under this rule; and
      (2) *Adequate interest.* The accused had a reasonable expectation of privacy in the person, place or property searched; the accused had a legitimate interest in the property or evidence seized when challenging a seizure; or the accused would otherwise have grounds to object to the search or seizure under the Constitution of the United States as applied to members of the armed forces.
          *    *    *    *    *    *
   (c) *Nature of search or seizure.* A search or seizure is "unlawful" if it was conducted, instigated, or participated in by:
          *    *    *    *    *    *
      (2) *Other officials.* Other officials or agents of the United States, of the District of Columbia, or of a State, Commonwealth, or possession of the United States or any political subdivision of such a State, Commonwealth, or possession and was in violation of the Constitution of the United States, or is unlawful under the principles of law generally applied in the trial of criminal cases in the United States district courts involving a similar search or seizure. . . .

of distinction between private and governmental action is often blurred in the military, where one "private" individual may exercise power over a second by virtue of rank and position. While the problem is complicated, true distinctions between public and private activity still may be discerned. *United States v. Carter*, 15 U.S.C.M.A. 495, 35 C.M.R. 467, 470–471 (1965).

To assist in this area, two significant guidelines were developed in *United States v. Volante*, 4 U.S.C.M.A. 689, 16 C.M.R. 263 (1954). This case involved a non-commissioned officer part-time Exchange steward who, acting as a private individual, searched the effects of a lower-ranking enlisted man who also worked there part-time. Declining to reverse a conviction, the Court stated that the search:

> by a person duly assigned to law enforcement duty and made for the sole purpose of enforcing military law, is conducted by a person acting under the authority of the United States [and] a search by one having direct disciplinary power over the accused is one under the authority of the United States.

*United States v. Volante, supra*, 4 U.S.C.M.A. 689, 16 C.M.R. 263 at 266.

The Court of Military Appeals and this Court have continued to develop the nuances of private—as contrasted to official—action in a series of cases. See, in particular, *United States v. Thomas*, 16 U.S.C.M.A. 305, 36 C.M.R. 462 (1966); *United States v. Rogan*, 8 U.S.C.M.A. 739, 25 C.M.R. 243 (1958); and *United States v. Fleener*, 43 C.M.R. 974 (A.F.C.M.R.1971). See also *United States v. Lopez-Santiago*, 32 C.M.R. 802, 805 (A.F.B.R.1962).

We read the true rule of these cases to be this: Only law enforcement agents acting solely in that capacity or those holding direct disciplinary control over the accused exercise the degree of governmental activity rendering a search official. *See* Beeson and James, *Searches by Private Individuals: Admissible Windfalls*, XV AF JAG L.Rev. 91 (Sept. 1973).

There is a slight difference between the language developed in case law and Mil.R.Evid. 311.[4] We hold that Mil.R.Evid. 311 represents no significant change in the existing military law of search and seizure. See Mil.R.Evid. 311, Analysis. Accordingly, *Volante* and its progeny remain viable precedents for the instant case.

The Exchange system sells common goods and services, paralleling functions performed by private commercial stores. Its employees are paid with self-generating non-appropriated funds, rather than Congressionally-approved funds. Air Force Pamphlet 110–3, Civil Law, dated 17 May 1976, paragraph 14–23. For certain purposes, Exchange employees are not considered agents of the United States. See *Solomon v. United States*, 559 F.2d 309 (5th Cir. 1977).

Such, we believe, is the case here. At the time in question, Mrs. Bowers was not acting to benefit the Government. During the course of normal duties, her main purpose was to protect the Exchange system and safeguard its customers from pilferage, not to ferret out crime for government prosecution.[5] Her authority over the accused was limited to his voluntary cooperation, and she does not appear from the record to have exceeded her authority. In short, she was a store detective, unrelated to governmental law enforcement or representing the commander's punitive or disciplinary power. After analyzing both military and civilian precedents, we equate

---

4. *Volante, supra*, employs the term "under the authority of the United States." Mil.R.Evid. 311(c)(2) uses the term "official or agent of the United States."

5. The Exchange directive governing shoplifting, which was before the military judge at trial, provided in relevant part that: (a) AAFES is not a law-enforcement or investigative agency; (b) while certain employees are authorized to detain customers suspected of shoplifting, no coercion is involved since "No AAFES civilian is empowered to arrest or apprehend"; and (c) employees may not touch or otherwise attempt to forcibly restrain a suspect—an uncooperative suspect must be allowed to proceed (ESM 61–1, July 1979, paragraphs 6–25 through 6–30).

her for purposes of the exclusionary rule with any other store employee, and we find that she was not acting in a governmental capacity within the purview of Mil.R.Evid. 311.[6]

### Expectation of Privacy

■ Even if we were to consider Mrs. Bowers as a law enforcement agent acting in a governmental capacity, we would find this search permissible. This is so because the accused has no reasonable expectation of privacy in the property searched. Mil.R. Evid. 311(a)(2).

As the military judge noted, the merchandise control records of the accused contained a copy of Clark Air Base Pamphlet 30–2, dated 16 January 1979, apparently signed by him; this document cautioned that spot checks might be made on sensitive items. Thus, the accused was on notice of possible examinations of property purchased at the Exchange.[7]

We believe that commercial enterprises, such as a nonappropriated fund activity, properly may examine merchandise which they are in the process of selling. The purpose is to insure the item being sold is indeed what it appears to be. Therefore,

even viewed in the light most favorable to him, the accused cannot be said to have acquired any unique or special privacy interest in the contents of the two boxes until the transaction was completed after he had stopped at the required merchandise contact point.

Under these circumstances, we hold that the right of inspection clearly existed and the accused had no reasonable expectation of privacy in the merchandise being sold. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *United States v. Grosskreutz*, 5 M.J. 344, 349 (C.M.A.1978); Mil.R.Evid. 311, Analysis. See also *Lucas v. United States*, D.C.Ct.App., 411 A.2d 360 (1980) and *City of University Heights v. Conley*, 20 Ohio Misc. 112, 49 Ohio Ops.2d 172, 252 N.E.2d 198 (Ct.App.1969). See also Note, *Private Searches and Seizures*, 90 Harvard L.Rev. 463, 466 (1976).

The findings of guilty and the sentence are

AFFIRMED.

EARLY, Chief Judge and MILES, Judge, concur.

---

6. Civilian courts generally have admitted into evidence, under the Supreme Court's *Burdeau* rule, the fruits of searches conducted by store detectives, security officers, insurance investigators, corporation security investigators, industrial security guards, and the like. See LaFave, *Search and Seizure*, § 1.6(d) and Annot., Admissibility, in Criminal Case, of Evidence Obtained by Search by Private Individual, 36 A.L.R.3d 553, 567 (1971).

   Since commercial stores seldom employ detectives who are on the public payroll, few civilian authorities are squarely on point. In *State v. McDaniel*, 44 Ohio App.2d 163, 337 N.E.2d 173 (Ct.App.1975), several store employees had been commissioned as special deputy sheriffs; the court found that their limited right of temporary detention did not involve the performance of public duty or make them law enforcement officers. See also *State v. Edwards*, 50 Ohio App.2d 63, 361 N.E.2d 1083 (Ct.App.1976). In *United States v. Francoeur*, 547 F.2d 891 (5th Cir. 1977), the court found that security employees of Disney World in Florida, a private corporation, were acting privately despite the contention that the guards were performing government functions.

   Numerous courts have held that university and high school officials attempting to interdict student drug possession were acting in private capacities, provided there was no motivating police activity. See *Ohio v. Wingerd*, 40 Ohio App.2d 236, 318 N.E.2d 866 (Ct.App.1974); 79 C.J.S. Searches & Seizures, § 113 (1980 Pocket part); and Gardner, *Sniffing for Drugs in the Classroom—Perspectives on the Fourth Amendment Search*, 74 N.W.U.L.Rev. 803 (1979). See also *State v. Keyser*, 117 N.H. 45, 369 A.2d 224 (1977) and *Arizona v. Hughes*, 8 Ariz.App. 366, 446 P.2d 472 (1968).

   Finally, airport security checks have likewise been generally upheld where there is no police instigation. See Note, *Airport Security Checks and the Fourth Amendment*, 71 Colum.L.Rev. 1039 (1971). *See also* Note, *Private Assumption of the Police Function under the Fourth Amendment*, 51 B.U.L.Rev. 463 (1971) and Note, *Private Searches and Seizures: An application of the Public Function Theory*, 48 Geo. Wash.L.Rev. 433 (1980).

7. Clark Air Base Pamphlet 30–2 sets forth preconditions to being eligible to shop at the Exchange.