**UNITED STATES**

v.

**Airman First Class William E. PORTT, Jr., FR 230–11–8200, United States Air Force.**

**ACM S26161.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 July 1983.

Decided 10 Feb. 1984.

witnesses against him. . . .

---

**912**

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Captain Conrad C. Baldwin, Jr.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Andrew J. Adams, Jr.

Before HODGSON, FORAY and MILLER, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The issue before us involves a search of a wall locker by members of the security police squadron who had been detailed to clean the guardmount room. The accused contends that this evidence and that later discovered, together with the subsequent incriminating statements made by him, were the results of an unlawful search by individuals acting in a governmental capacity who had neither a search authorization nor a valid consent. Mil.R.Evid. 311, 314, and 315. We disagree and affirm.

I

There is no dispute as to the facts. During the early morning hours of 8 May 1983, Airman First Class Garner and Airman First Class Coolidge were detailed by their flight chief to clean the security police guardmount room. This room is used to brief security policemen prior to going on duty, and contains chairs and wall lockers assigned to individual security policemen.

While cleaning the area, Garner noticed a locker with an unfastened lock hanging on it. He was curious as to whose locker it was and opened it. From the odds and ends he saw, i.e., a blue mitten and scraps of paper, he thought it was a "junk locker" and not assigned to anyone. Garner removed the mitten and tossed it to Coolidge who looked inside and found a crushed soda can which appeared to have been used as a marijuana smoking device. They placed the can back inside the mitten and returned it to the locker; they told their flight chief what they had found and he notified the law enforcement authorities who responded with a drug dog. When the dog did not alert on the locker, it was reopened and the soda can removed. The record is unclear as to who opened the locker the second time. The locker was assigned to the accused.

The next day, the accused, after proper advisement of rights was questioned by a security police investigator about the locker. He admitted to extensive marijuana involvement and consented to a search of

his room and automobile; the search disclosed items containing marijuana residue.

At trial, the accused moved to suppress his incriminating statements and the items found in his wall locker, room and car, arguing that the initial entry into his locker was unlawful, and "tainted" the consent search of his room and car and his confession. Trial defense counsel urged that Garner, a security policeman, was acting in an official capacity when he "rummaged" through the contents of a locker "without a legitimate reason and certainly without authority." Additionally, he urged that a search authorization was also required to remove the soda can from the locker the second time after Garner had returned it. The military judge denied the motion to suppress ruling that Garner's actions in opening the locker were outside the scope of any possible security police duty. He further ruled that the reopening of the locker was simply a continuation of Garner's initial entry as it served to explain what had been found, and was not an additional search or intrusion.

The accused was convicted by military judge alone of possessing, using and distributing marijuana, in violation of Article 134, U.C.M.J. 10 U.S.C. § 934.* The approved sentence extends to a bad conduct discharge, confinement at hard labor for four months, forfeiture of $350.00 per month for two months, and reduction to airman basic.

## II

■ Mil.R.Evid. 311(c) codifies existing case law and proscribes only those searches that result from governmental or official actions. The Fourth Amendment does not apply to searches and seizures conducted by private parties. *United States v. Morrison,* 12 M.J. 272 (C.M.A.1972); *United States v. Maxwell,* 484 F.2d 1350 (5th Cir.1973). It is a factual issue whether Garner's actions were a private search or if he was acting in an official government role. In *United States v. Pansoy,* 11 M.J. 811 (A.F.C.M.R.

1981), *pet. denied,* 12 M.J. 194 (C.M.A.1982), we discussed the nuances of private searches as contrasted to those having the degree of governmental activity so as to make the search official. Senior Judge Kastl in a well-reasoned decision concluded that only law enforcement agents acting *solely* in that capacity or those holding direct disciplinary control over the accused exercised the degree of governmental activity required to make the search official.

■ The accused suggests that Garner's status as a security policeman, albeit he was medically disqualified from carrying a weapon, provided Garner with sufficient governmental status to make the search "official" not "private." We find this argument unconvincing. Stated simply, Garner, and his companion were performing janitorial duties when they came upon an unsecured locker; they did not suspect that any crime had been committed. Garner's motivation for looking into the locker was curiosity not law enforcement. Only a small number of security policemen are assigned law enforcement duties, and neither Garner nor Coolidge fit that category. In fact, after Garner told his supervisor what he had found in the locker, that individual notified the law enforcement section of the security police squadron. There is no indication that Garner was encouraged by the Government to look in the locker. Further, he was not solely acting in a law enforcement capacity when he opened the locker; also it is clear that Garner had no direct disciplinary control over the accused.

Accordingly, based on the rationale of *United States v. Pansoy, supra,* we hold that the acts of Garner were not those of a government official or agent, but rather the acts of a private individual. *Cf. Commonwealth v. Eshelman,* 236 Pa.Super. 223, 345 A.2d 286 (1975) (Off duty auxiliary policeman is a private citizen and not bound by the Fourth Amendment); *see also Commonwealth v. Weiss,* 370 Mass. 416, 348 N.E.2d 787 (1976) (Search of airport locker by at-

---

* The accused was acquitted of possessing and using drug abuse paraphernalia. Additionally, the convening authority dismissed an allegation

that the accused possessed marijuana on a military installation with the intent to distribute.

**914**

tendant not covered by Fourth Amendment). We attached no significance to the fact that the locker was reopened to retrieve the evidence that Garner had previously discovered. *United States v. Williams,* 17 M.J. 570 (A.F.C.M.R.1983). As stated earlier the record is unclear as to who opened the locker the second time, but accepting, *arguendo,* it was either Garner's flight chief or the security police investigator, the soda can was still lawfully obtained. The crux to the situation, *sub judice,* is Garner's initial discovery of the evidence which we have found to be lawful.

In *United States v. Volante,* 4 U.S.C.M.A. 689, 16 C.M.R. 263 (1954) and *United States v. Rogan,* 8 U.S.C.M.A. 739, 25 C.M.R. 243 (1958), the Court of Military Appeals discussed the admissibility of evidence obtained in a search by private persons. The facts in the decisions cited above are similar to the case at bar.

In *Volante, supra,* two Marine non-commissioned officers searched a wall locker and a foot locker of a fellow Marine. The door to the wall locker was closed but unlocked; the foot locker was closed and locked. Examination of these lockers disclosed money and merchandise, some of which bore exchange price tags. The two Marines who found the evidence told the exchange officer who notified the Provost Marshal's office who in turn sent two investigators. These two individuals interviewed the accused and made a further search of the lockers. The accused, after an advisement of rights, admitted taking the money and merchandise from the post exchange. Trial defense counsel contended that the initial search by the two non-commissioned officers was unlawful and that the accused's statement to the investigators was derived directly from that search. In affirming the conviction, the Court of Military Appeals stated that the two Marines were private persons motivated by personal interests.

The result was the same in *Rogan, supra,* where the accused's gas mask container was searched by a master sergeant who found a missing camera hidden in it. The gas mask and camera were in a drawer of a desk in an office where the accused worked. The noncommissioned officer who found the camera hidden in the gas mask returned it to the desk drawer and notified the officer of the day; later the camera was removed. Here also the search was upheld.

In the case before us, that Garner returned the soda can to the locker does not erase the lawfulness of the original entry. The second entry was confined to the scope and product of the initial search. Thus it was not unreasonable. For the reasons stated the findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and MILLER, Judge, concur.