UNITED STATES, Appellee,

v.

William E. PORTT, Jr., Airman First Class U.S. Air Force, Appellant.

No. 49683/AF.
ACM S26161.

U.S. Court of Military Appeals.

Feb. 17, 1986.

For Appellant: *Major Conrad C. Baldwin, Jr.* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Captain Joseph S. Kistler* (argued); *Colonel Kenneth R. Rengert* and *Colonel Andrew J. Adams, Jr.* (on brief).

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted, by a military judge sitting alone as a special court-martial, of possession, distribution, use, and introduction of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. His sentence to confinement at hard labor for 4 months, forfeiture of $350 pay per month for 2 months, reduction to pay grade E–1, and a bad-conduct discharge was approved by the convening authority. The supervisory authority disapproved the finding of guilty as to the introduction offense, modified the findings as to the use and possession offenses, reassessed the sentence, and approved the sentence as adjudged. The Court of Military Review affirmed. 17 M.J. 911 (1984). This Court granted review of the following specified issue:

> WHETHER THE MILITARY JUDGE ERRED BY DENYING A DEFENSE MOTION TO SUPPRESS PROSECUTION EXHIBITS 1–7 BY RULING THAT THE REOPENING OF APPELLANT'S LOCKER WAS A CONTINUATION OF THE INITIAL ENTRY AND WAS AN ACT INCLUDED WITHIN THE PLAIN VIEW DOCTRINE.

We hold that under the circumstances of this case appellant had no legitimate expectation of privacy in the unlocked locker located in a common area and affirm.

The facts are not in dispute. Airman Scott Garner and Airman Ronald Coolidge

were assigned to clean the security police guard-mount room on the morning of May 8, 1983. This room was used for briefings and contained desks, chairs, and small wall lockers. The lockers were assigned by request to individual security policemen who wanted one for their own use. Each user was required to provide a padlock for his locker at his own expense.

Airman Garner noticed that one of the lockers, A–44, was unlocked, with the padlock just hanging on it. He testified that he opened the locker because he was "curious" and observed only a mitten lying on top of a white piece of paper and what appeared to be a yellow shot record. He surmised that it was a "junk" locker and not assigned to anyone.

Airman Garner then removed the mitten and threw it at Airman Coolidge, who found a crushed soda can inside it. After examining the can, they suspected that it had been used as a device to smoke marihuana. Becoming nervous at the prospect of being found in the possession of contraband, they put the can back inside the mitten, returned the mitten to the locker, closed the door, and reported their findings to the flight chief. Law-enforcement authorities were notified and responded with a drug dog and handler, and a security police investigator.

Although the dog did not alert on locker A–44, the locker was opened by law-enforcement officials and searched, apparently to determine whose locker it was. Records of the locker assignments were kept on cards by the six flight chiefs, but the card reflecting the assignment of locker A–44 was unavailable at the time. Appellant's name appeared on the shot record discovered in the locker, which led the security police to appellant. Upon questioning, appellant admitted that locker A–44 was assigned to him, although he had not used it in six months, and confessed that he frequently used and distributed marihuana. Furthermore, he consented to a search of his barracks room, urine, and automobile.

■ Prior to pleas, appellant sought to suppress the resulting physical evidence and confessions as tainted by the illegal entry into his locker. The military judge denied the motion to suppress, finding that the initial entry into the locker was not a governmental intrusion, but the act of a private individual, and the subsequent opening of the locker was simply a continuation of that entry. We agree that the initial invasion of the locker by Airman Garner was that of a private individual not acting as an agent of the Government. A private invasion, whether "accidental or deliberate," "reasonable or unreasonable," does "not violate the Fourth Amendment because of ... [its] private character." *United States v. Jacobsen*, 466 U.S. 109, 115, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984) (footnote omitted).

■ The question is whether the Fourth Amendment required the law-enforcement officials to obtain a search authorization before they opened the locker a second time and examined the contents. Appellant can successfully invoke the Fourth Amendment's prohibition against unreasonable searches only if he had a reasonable "expectation of privacy" in the locker which has been violated by the search that occurred. 104 S.Ct. at 1656; *Illinois v. Andreas*, 463 U.S. 765, 767–73, 103 S.Ct. 3319, 3322–24, 77 L.Ed. 2d 1003 (1983). The determination of whether a reasonable expectation of privacy existed is a legal conclusion. *United States v. Vicknair*, 610 F.2d 372 (5th Cir. 1980), *cert. denied*, 449 U.S. 823, 101 S.Ct. 83, 66 L.Ed.2d 25 (1980). In considering reasonableness, we must determine

whether a person invoking the protection of the Fourth Amendment took normal precautions to maintain his privacy—that is, precautions customarily taken by those seeking privacy.

*Rakas v. Illinois*, 439 U.S. 128, 152, 99 S.Ct. 421, 435, 58 L.Ed.2d 387 (1978) (Powell, J., concurring).

The Supreme Court has applied the two-point test articulated by Justice Harlan in *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)

(Harlan, J., concurring), to determine whether an accused had a legitimate expectation of privacy:

> [F]irst that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable."

*Id.* at 361, 88 S.Ct. at 516. *See also Michigan v. Clifford,* 464 U.S. 287, 290–93, 104 S.Ct. 641, 646, 78 L.Ed.2d 477 (1984); *Smith v. Maryland,* 442 U.S. 735, 740–41, 99 S.Ct. 2577, 2580–81, 61 L.Ed.2d 220 (1979).

■ We doubt that appellant maintained a subjective expectation of privacy in locker A–44. His failure to secure the lock, keep any valuables in it, or even go near the locker in six months indicates as much. Even if appellant satisfied the first part of Justice Harlan's test, however, the facts do not satisfy the second and most important part.

Generally, a warrantless search of a government locker assigned for the personal use of a military member, particularly if the locker were located in living quarters, would be unreasonable, as such lockers are in a class of effects in which there exists a legitimate expectation of privacy. The locker here, however, was located in a common area. Moreover, the initial private invasion of the locker revealed that it was an apparently abandoned "junk" locker, with the only contents being a crushed soda can inside a mitten and two scraps of paper. The law-enforcement officials were free to avail themselves of this information. "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-non-private information." *United States v. Jacobsen,* 466 U.S. at 117, 104 S.Ct. at 1658.

In addition to the information obtained through the private action, the law-enforcement officials knew that no name was on the locker and that it was left unlocked in a common area where all the other lockers were routinely locked. Thus, appellant had failed to take the most elementary precaution, one that was taken by the other locker users to maintain their privacy. Based on the facts as they existed at the time of the governmental intrusion into the locker, we conclude that appellant retained no reasonable expectation of privacy in the locker.[*]

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

---

[*] The second invasion of the locker led to the identification of appellant. That the locker was assigned to appellant was a fact that likely would have been discovered by the police in any event. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Kozak,* 12 M.J. 389 (C.M.A. 1982).