UNITED STATES, Appellee

v.

Joshua M. MICHAEL, Photographer's Mate Airman Recruit
U.S. Navy, Appellant

No. 07-6005

Crim. App. No. 200700120

United States Court of Appeals for the Armed Forces

Argued November 14, 2007

Decided February 26, 2008

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and STUCKY, J., joined. RYAN, J., filed a separate opinion concurring in part and in the result in which ERDMANN, J., joined.


Counsel

For Appellant: Lance B. Sigmon, Esq. (argued); Lieutenant W. Scott Stoebner, JAGC, USN (on brief).

For Appellee: Major Brian K. Keller, USMC (argued); Commander Paul C. LeBlanc, JAGC, USN, (on brief); Lieutenant Commander Paul D. Bunge, JAGC, USN.

Amicus Curiae for Appellant: Captain Timothy M. Cox and Captain Anthony D. Ortiz for the United States Air Force Appellate Defense Division (on brief).

Amicus Curiae for Appellee: Colonel Gerald R. Bruce and Major Matthew S. Ward for the United States Air Force Appellate Government Division (on brief).

Military Judges: John A. Maksym and John D. Bauer


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Michael, No. 07-6005/NA

   Judge BAKER delivered the opinion of the Court.

   Appellant is currently on trial for allegedly receiving and possessing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000). This is our review of the Government's successful appeal to the United States Navy-Marine Corps Court of Criminal Appeals of the military judge's ruling suppressing key evidence found on Appellant's computer. United States v. Michael, No. NMCCA 200700120 (N-M. Ct. Crim. App. May 9, 2007). Appellant's petition has been granted on the following issue alleging error on the part of the lower court:

> WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL
> APPEALS ERRONEOUSLY LIMITED THIS COURT'S HOLDING IN
> UNITED STATES V. CONKLIN, 63 M.J. 333 (C.A.A.F. 2006),
> BY FINDING THAT "IT APPEARS THE MILITARY JUDGE APPLIED
> AN ERRONEOUS STANDARD OF REASONABLENESS" IN
> SUPPRESSING THE SEARCH OF APPELLANT'S LAPTOP COMPUTER.[1]

---

[1] The following additional issue was initially specified by this Court:

> WHETHER AND HOW THIS COURT HAS STATUTORY AUTHORITY TO
> EXERCISE JURISDICTION OVER INTERLOCUTORY APPEALS UNDER
> EITHER ARTICLE 67(a)(2) OR (3), UCMJ, 10 U.S.C. § 867
> (a)(2), (3) (2000), FROM DECISIONS OF THE COURTS OF
> CRIMINAL APPEALS UNDER ARTICLE 62, UCMJ, 10 U.S.C. §
> 862 (2000), AND WHETHER, AS A MATTER OF LAW, THIS
> COURT'S DECISION IN UNITED STATES v. TUCKER, 20 M.J.
> 52, 53 (C.M.A. 1985), SHOULD BE OVERTURNED.

Our decision in United States v. Lopez de Victoria, __ M.J. __ (C.A.A.F. 2008), also decided today, resolved this issue in favor of jurisdiction, thus rendering the issue in this case moot.

BACKGROUND[2]

At the time of the offenses, Appellant was a student at the Defense Information School (DINFOS). At 8:40 a.m. on March 29, 2006, a student found a laptop computer while cleaning the male lavatory of the Navy student barracks. The circumstances indicated that it had been left there unintentionally. The laptop was closed, in the off mode, and had no outward markings identifying the owner. The student turned the laptop in to Petty Officer First Class Goeth and Chief Petty Officer Campbell who were military training instructors (MTI) on duty in the Staff Duty Office of the barracks that morning. Since there were no apparent indicia of ownership on the outside of the laptop, Goeth opened it and turned it on in an attempt to identify the owner. The laptop displayed a log-on icon and the name "Josh." The computer was not password protected, so Goeth clicked on the icon and displayed the desktop. A "Control Panel" icon was among the various icons on the desktop. He proceeded to the control panel and opened the "System Properties" icon where he observed that the laptop was registered to a person named "Josh." At this point, Goeth consulted the roster of Navy students assigned to DINFOS living in the barracks. The roster showed three students assigned to

---

[2] The background factual matters are taken from the lower court's opinion and the military judge's findings of fact and conclusions of law of February 7, 2007, contained in the record.

the Navy barracks with the name "Josh." Appellant was one of these three students. Goeth was also aware that Appellant was on restriction and was required to check in with the MTI duty office every two hours. Appellant had checked in forty minutes before and was not due to check in again until 10:00 a.m. Goeth did not attempt to contact or locate any of the three students named "Josh." Instead, he returned to the computer and navigated to the "Recent Documents" section on the "Start" menu. He testified that he did so assuming he would find recent school work on the computer reflecting the owner's last name. When he clicked the "Recent Documents" tab, it displayed a list of files with names suggesting they might contain child pornography.[3] Upon opening one of the files, Goeth's suspicions were confirmed. He then immediately turned the laptop in to the legal office. Appellant was later determined to be the owner of the laptop.

At the hearing on the suppression motion, the military judge heard the testimony of several witnesses including Goeth and Campbell. He then entered findings of fact and conclusions of law. Specifically at issue is the military judge's conclusion that "Goeth's actions in opening the 'Recent Documents' icon was avoidable, unnecessary, and, accordingly,

---

[3] Goeth described the files as "something to the effect of '9-year old girl does something explicit with her father,'" and "something along the lines of . . . '8-year old cum shot.'"

unreasonable."  He explained his conclusion stating that:
"There were several other options that could have been done to
make going into a personal computer and the files on the
computer -- make that avoidable:  either finding the three
people named 'Josh,' or announcing that a computer was found, or
-- or any of those other options . . . ."  The Court of Criminal
Appeals disagreed with the military judge's conclusion that the
search constituted an unreasonable intrusion because it was
"avoidable and unnecessary" in light of the less intrusive means
available to determine ownership.  Michael, No. NMCCA 200700120,
slip op. at 4.  It concluded that he had employed an erroneous
view of the law in suppressing the contents of the laptop and
reversed the trial ruling.  Id. at 5.

                           DISCUSSION

    "A military judge's decision to admit or exclude evidence
is reviewed under an abuse of discretion standard."  United
States v. McDonald, 59 M.J. 426, 430 (C.A.A.F. 2004) (citing
United States v. Tanksley, 54 M.J. 169, 175 (C.A.A.F. 2000),
overruled on other grounds by United States v. Inong, 58 M.J.
460, 464 (C.A.A.F. 2003)).  We apply this standard when
reviewing evidentiary rulings under Article 62, UCMJ, 10 U.S.C.
§ 862 (2000).  A military judge abuses his discretion if his
findings of fact are clearly erroneous or his conclusions of law

are incorrect.  United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995).

The Fourth Amendment does not protect against all searches. Rather, it proscribes only unreasonable searches.  "The ultimate standard set forth in the Fourth Amendment is reasonableness." Cady v. Dombrowski, 413 U.S. 433, 439 (1973).  For the purposes of military law a Fourth Amendment search is "a government intrusion into an individual's reasonable expectation of privacy."  United States v. Daniels, 60 M.J. 69, 71 (C.A.A.F. 2004) (citations omitted); United States v. Jacobs, 31 M.J. 138, 143 (C.M.A. 1990) (requiring official or governmental action in the conduct of a Fourth Amendment search); see also United States v. Portt, 21 M.J. 333, 334 (C.M.A. 1986) (distinguishing between a military member acting as a private individual and "an agent of the Government").

"'Mislaid property' is that which is intentionally put into a certain place and later forgotten."  1 Am. Jur. 2d. Abandoned, Lost, and Unclaimed Property § 14 (2007).  Here, the military judge's findings indicate that under the circumstances of its recovery, the computer could appropriately have been characterized as mislaid property.  While an owner retains some expectation of privacy in lost or mislaid property, that interest is "outweighed by the interest of law enforcement officials in identifying and returning such property to the

6

owner." Gudema v. Nassau County, 163 F.3d 717, 722 (2d Cir. 1998) (citation omitted).[4]  Presumably, the owner of valuable mislaid property anticipates and hopes that if the mislaid property is found it will be turned in to authorities. Similarly, he expects that authorities will make reasonable efforts to determine the identity of the owner and keep the property safe until its return to him.

Since none of our prior decisions has squarely addressed the search of mislaid property, resolution of the issue necessarily requires a weighing of the governmental interests at stake against the constitutionally protected interest of the servicemember in the privacy of his effects.  See South Dakota v. Opperman, 428 U.S. 364, 377-78 (1976) (Powell, J., concurring).  "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means."  Illinois v. Lafayette, 462 U.S. 640, 647 (1983).  United States v. Conklin, 63 M.J. 333 (C.A.A.F. 2006), does not state otherwise.  Rather, that case addressed the question of whether the taint from a prior unlawful search was vitiated by later events for the purpose of the application of the exclusionary rule.  Id. at 335-40.  In dicta, the Court commented on the unlawful search

---

[4] It is well settled that a person retains no expectation of privacy in abandoned property.  See 29 Am. Jur. 2d. Evidence § 646 (2007).

itself in the context of addressing the deterrent effect of the exclusionary rule. Id. at 340. The Court noted that in the context of a dormitory room inspection, the search itself was avoidable because there were less intrusive means available to obtain search authorization. Id. at 339.

Whether Goeth's search was reasonable or unreasonable in this case does not hinge on whether less intrusive means were available. Rather, it depends on whether Appellant had a subjective (actual) expectation of privacy in the property searched that was objectively reasonable. Id. at 337. This in turn depends, in part, on the location of the property searched. As the Court noted in Conklin, "'the threshold of a barrack/dormitory room does not provide the same sanctuary as the threshold of a private room.'" Id. (citation omitted). The same can be said of a public restroom. The reasonableness of the search also depends on the nature and scope of the governmental intrusion.

Goeth testified that his duties as an MTI included receiving and securing valuable personal effects of the students depending on what "phase" of training the students had entered. Thus, he was engaged in a caretaking function. See generally Opperman, 428 U.S. at 369. Although the rules of evidence contain no express provision for situations like this, Military Rule of Evidence (M.R.E.) 314(k) addresses "Other searches."

8

Under this rule, "A search of a type not otherwise included in this rule and not requiring probable cause under Mil. R. Evid. 315 may be conducted when permissible under the Constitution of the United States as applied to members of the armed forces." See Murray v. Haldeman, 16 M.J. 74, 82 (C.M.A. 1983) (upholding Navy compulsory urinalysis program in part based on M.R.E. 314(k)). The military judge concluded that it was reasonable for Goeth, in determining the identity of the owner, to proceed all the way to the "Systems Properties" display. However, the military judge's conclusion that Goeth's continued efforts in determining the last name of the owner were unreasonable in light of other alternatives is inconsistent with what the law requires. "[T]he real question is not what 'could have been achieved,' but whether the Fourth Amendment requires such steps." Lafayette, 462 U.S. at 647. In this case, on these facts, Appellant possessed a diminished expectation of privacy in his personal computer that was mislaid in a common area. Further, the legitimate governmental interest in identifying the owner of mislaid property and safekeeping it until its return to the owner outweighed the interest Appellant retained in his mislaid and subsequently found laptop. Moreover, the military judge made no findings of ulterior motive, nor did he question Goeth's assertion that his examination was for identification purposes only. In the military context, it was reasonable for

the MTI to seek to determine the ownership of the computer and do so by powering it up and performing a cursory examination of folders likely to reveal the owner's identity.

Thus, having lawfully reached the "Recent Documents" list, it may be that the files in issue were at that point in plain view. However, because of the interlocutory nature of the issue we leave resolution of this question to the military judge on remand. It is enough that we agree with the lower court that the military judge relied on an erroneous view of the law and conclude as the lower court did that Goeth's search was reasonable at least up to that point that he observed Appellant's list of recent files viewed.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed. The record is returned to the Judge Advocate General of the Navy for remand for further proceedings.

United States v. Michael, 07-6005/NA

    RYAN, Judge, joined by ERDMANN, Judge (concurring in part and in the result):

    For the reasons stated in my dissent in United States v. Lopez de Victoria, No. 07-6004, slip op. (C.A.A.F. Feb. 25, 2008) (Ryan, J., dissenting) I would hold that we have no jurisdiction over this case in its present procedural posture.  However, the Court has found that we have jurisdiction, and I agree with the opinion of the Court on the merits.  Consequently, I concur in the judgment.  See, e.g., McKelvey v. Turnage, 792 F.2d 194, 210 (D.C. Cir. 1986) (Scalia, J., concurring in part and dissenting in part) (participating on the merits after finding, contrary to the majority, that no jurisdiction existed).  I do not intend, going forward, to revisit my dissent on the jurisdictional point in every appeal of a Court of Criminal Appeals decision stemming from an Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 (2000), appeal:  a majority of the Court has held that we have jurisdiction.