# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, R.Q. WARD, J.A. FISCHER**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**NICHOLAS TIENTER**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201400205**
**Review Pursuant to Article 62(b), Uniform Code of Military Justice,**
**10 U.S.C. § 862(b)**

**Military Judge**: LtCol L.J. Francis, USMC.
**Convening Authority**: Commanding General, 3d Marine Aircraft Wing, MCAS Miramar, San Diego, CA.
**For Appellant**: Capt Cory A. Carver, USMC.
**For Appellee**: Maj John J. Stephens, USMC; Capt Michael B. Magee, USMC.

**23 September 2014**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

WARD, Senior Judge:

This case is before us on a Government interlocutory appeal pursuant to Article 62, Uniform Code of Military Justice.[1]  The appellee, Lance Corporal Nicholas W. Tienter, U.S. Marine Corps, is currently charged with two specifications of violating

---
[1] 10 U.S.C. § 862 (2012).

Article 120, UCMJ.[2]  The Government appeals the military judge's ruling suppressing text messages that law-enforcement agents seized during a search of the appellee's cell phone.[3]  Following the military judge's written ruling, trial counsel filed a timely notice of appeal.[4]

After carefully considering the record of the motion hearing, the military judge's ruling, and the submissions of the parties, we find that the military judge did not abuse his discretion by granting the defense motion to suppress. Accordingly, we deny the Government's appeal and remand this case.

**Background**

This case arises from an allegation that the appellee engaged in a sexual act with someone who was substantially incapacitated due to alcohol intoxication.  The alleged incident occurred in November 2011.  The case was referred for trial by general court-martial in September 2013.

In October 2013, the appellee underwent surgery while pending trial.  Soon after his surgery, the appellee reported to his command that Corporal (Cpl) S, a fellow Marine in his squadron, had asked him for several of the Percocet pills prescribed to him following surgery.  These solicitations came in the form of text messages.  In late November 2013, the appellee provided a transcript of some of these text messages to members of his command, who in turn referred the matter to law enforcement.[5]

Based on the appellee's tip, Special Agent (SA) Isaac Perez of the Criminal Investigation Division (CID) sought authorization from the Commanding Officer, MCAS Miramar, to search the appellee's cell phone and seize electronic messages pertaining to the use and/or possession of prescription medication.  In his supporting affidavit, SA Perez stated that after seizing the data from the appellee's cell phone, CID agents would search the data using "search protocols directed exclusively to the identification and extraction of data within

---

[2] 10 U.S.C. § 920 (Supp. 2008).

[3] Appellate Exhibit XIX.

[4] AE XXI.

[5] The texts provided by the appellee did not indicate any dates.

the scope of this warrant."[6] SA Perez further stated that this analysis would be completed within 90 days.[7]

On 20 November 2013, the Commanding Officer, MCAS Miramar, authorized SA Perez to search the appellee and seize his cell phone.[8] The military judge found that the scope of the authorized search was limited to "evidence relating to the wrongful use and possession of controlled substances as related to communications between the accused and Cpl [S]" as well as "any electronic mails sent or received in temporal proximity to the incriminating electronic mails that provide context to the incriminating mails."[9]

After seizing the appellee's cell phone, SA Perez attached it to a Cellebrite Universal Forensic Extraction Device (UFED), which in turn made a complete digital copy of all data in the cell phone. By selecting various software tools associated with the program, he created a single Portable Document Format (PDF) file containing all text messages retrievable on the cell phone.[10] By using keywords and phrases associated with prescription medication, he located several text messages pertaining to illegal drug use. In addition to these texts, SA Perez also discovered one text wherein the appellee admitted to adultery. SA Perez then drafted an investigative report documenting his search and the aforementioned text messages.[11]

Several months later, the senior trial counsel at MCAS Miramar notified SA Perez that she had located a text message in the extraction file pertaining to the sexual assault offenses then pending trial. She asked SA Perez to go back and search

---

[6] AE IX, Appendix A at 6.

[7] *Id.*

[8] *Id.* at 1. Although SA Perez's affidavit references searching the appellee's cell phone for "[c]ommunication between [the appellee] and Cpl [S], wherein Cpl [S] solicits [the appellee] for prescription medication", the command authorization provides no explicit authorization to search the contents of the cell phone. Rather, it merely authorizes the search of the appellee's person and seizure of his cell phone. The apparent variance between the affidavit and the authorization does not change the outcome of this case.

[9] AE XIX at 4-5 (internal quotation marks and parentheses omitted) (quoting AE IX, Appendix A, at 13).

[10] Record at 33-34.

[11] *Id.* at 34-35.

3

the same extraction file for any additional text messages that may relate to the appellee's pending sexual assault charges.[12]

SA Perez, with the assistance of SA Stemen of the Naval Criminal Investigative Service (NCIS) and using search terms specific to the sexual assault allegations, discovered several additional text messages which formed the basis of the defense motion to suppress.[13]  Even though more than 90 days elapsed since the search authorization had been granted, SA Perez did not seek an additional search authorization.

## Standard of Review

We review a military judge's ruling on a motion to suppress for abuse of discretion.[14]  We review the military judge's findings of fact under a clearly-erroneous standard but we review his conclusions of law de novo.[15]  "Thus, on a mixed question of law and fact . . . a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect."[16]

When reviewing matters under Article 62, UCMJ, we act only with respect to matters of law and we review the military judge's ruling on a motion to suppress in a light most favorable to the prevailing party, here the appellee.[17]

## Applicable Law

Protecting against unreasonable searches and seizures, the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[18]

---

[12] *Id*. at 36.

[13] SA Perez and SA Stemen searched the extraction file first using the names of the appellee, witnesses and the alleged victim before using keywords and searches such as "[o]n top, oral sex [and] blow job".  *Id*. at 52-53.

[14] *United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011).

[15] *Id*. (citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)).

[16] *Ayala*, 43 M.J. at 298.

[17] *Id*. at 288 (citations omitted).

[18] U.S. CONST. amend. IV.

4

Even when made pursuant to a warrant, a search must conform to the scope authorized, as an authorization to search does not give rise to an open-ended license to rummage for anything of evidentiary value.  Granting such general power would violate the Fourth Amendment's requirement that warrants describe with particularity those areas to be searched and items seized.[19]

Data stored within a cell phone fall within the Fourth Amendment's protections.[20]  As such, evidence obtained from a Government search of cell phone data generally will be inadmissible unless (1) the search was conducted pursuant to a search authorization or warrant, or (2) a recognized exception applies.

## Discussion

Following the motion hearing, the military judge issued a written ruling wherein he made numerous findings of fact.  For the most part, the parties agree with his findings.  The Government alleges, and the defense concedes, that the military judge made at least one finding of fact that was clearly erroneous.[21]  We find the remaining findings fairly supported by

[19] *See Marron v. United States*, 275 U.S. 192, 196 (1927) (holding that particularity requirement of Fourth Amendment prevent general searches and "prevents seizure of one thing under a warrant describing another."); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (finding that one of the constitutional protections afforded by the Fourth Amendment is a prohibition against "a general, exploratory rummaging in a person's belongings." (Citations omitted)).

[20] *Riley v. California*, 134 S. Ct. 2473, 2494-95 (2014).  *See also United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014) ("Therefore, cell phones may not be searched without probable cause and a warrant unless the search and seizure falls within one of the recognized exceptions to the warrant requirement." (Citations omitted)).

[21] The military judge found that law-enforcement agents used the Cellebrite machine three times when in fact SA Perez only use the Cellebrite machine to extract data from the appellee's cell phone once on 21 November 21.  AE XIX at 5, 7; Record at 32-33.  We find this error immaterial as the military judge's ruling was predicated on the scope of the searches occurring after the cell phone data were seized.  His findings on that matter are comprehensive and well-supported by the record.  The Government also takes issue with the absence of findings regarding the senior trial counsel's role in searching the .pdf file and discovering one of the text messages at issue.  The record could support a finding that it was the senior trial counsel who prompted law-enforcement agents to search the data for evidence of sexual assault as part of a "separate investigation" from the drug case.  Record at 36.  But the military judge omitted any such finding and we are not permitted to supplement his ruling with our own findings in reviewing a Government appeal.  We are not convinced that his omission was clearly erroneous.  Nor

the record and utilize them for purposes of our analysis.  We do not add findings of fact or substitute our own interpretation of what happened – we merely strike the erroneous finding and apply the appropriate legal tests to the remaining facts.[22]

We conclude, as did the military judge, that the agents involved exceeded the scope of the authorized search at the time of the discovery of the additional texts and therefore the plain view exception does not apply.

**1. Lawful Scope of the Search**

A warrant or search authorization must describe "with particularity" the place to be searched and the items to be seized.  This protects a person from the unreasonable "rummaging through one's personal belongings" prohibited under the Fourth Amendment.[23]  Thus, when a magistrate limits the scope of a search to evidence of a particular crime, a search for evidence pertaining to an unrelated crime is beyond the scope of the warrant.[24]  Whether police or Government agents are acting within the scope of the warrant depends in large part on the reasonableness of their actions.[25]

The search authorization issued in November 2013 allowed SA Perez to search the appellee's cell phone data for any electronic communications between the appellee and Cpl [S] relating to use and possession of a controlled substance.[26]  No mention of any other crime is made.

During SA Perez's original search of the cell phone data, he only discovered one text message unrelated to illegal drug use, and that message related to adultery.  At the motions hearing, he admitted that had he come across the additional

---

would further fact-finding on the senior trial counsel's involvement affect the outcome in this case.

[22] *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007).

[23] *Coolidge,* 403 U.S. at 467.

[24] *Marron*, 275 U.S. at 196; *see also United States v. Decker,* 956 F.2d 773, 778 (8th Cir. 1992) (holding that warrant authorizing seizure of UPS package suspected to contain drugs did not authorize seizure of drugs and drug paraphernalia from the premises).

[25] *United States v. Michael*, 66 M.J. 78, 80 (C.A.A.F. 2008).

[26] AE XIX at 4-5.

texts during his original search, he would not have interpreted them as evidence of a sexual assault.[27]  Only months later did SA Perez re-examine the extraction file with the aid of SA Stemen for any additional evidence of sexual assault.  Last, and perhaps most significant, is that nowhere did the search authorization specify searching for evidence of sexual assault.

Under these circumstances, we agree with the military judge that the agents exceeded the scope of the search and accordingly lacked probable cause to seize these additional text messages.  Even if, as the Government contends, the search authorization might reasonably have permitted SA Perez to "review[] all of the texts messages by reading every page of the PDF," in his search for drug evidence,[28] the authorization did not permit a search for evidence pertaining to sexual assault.  Therefore, the agents could lawfully seize the additional text messages only if they were in plain view.

## 2. Plain View Exception

We conclude that the military judge did not err by ruling that the plain view exception did not apply.  The Government argues that these additional text messages were in plain view because they were contained in the same raw data file as the text messages related to prescription medication.  But SA Perez did not discover these text messages during his original search for drug-related communications, despite finding one unrelated message concerning adultery.  It does not follow that one piece of data is in plain view simply because it is co-located with another piece of data somewhere within 2,117 pages of material.[29] To the contrary, the record indicates that law-enforcement agents only located these text messages by using search terms specifically aimed at finding evidence of sexual assault.

Under these facts, we agree with the military judge that agents exceeded the scope of the search authorization in searching the extraction report for evidence of sexual assault. Since the plain view doctrine requires that law-enforcement agents act within the scope of the authorization at the time of

---

[27] Record at 50.

[28] Appellant's Brief of 27 Jun 2014 at 13.

[29] The military judge found that "[t]he extraction report consists of 2117 pages of material collected from the [appellee's] cellular phone to include numerous texts messages most [of] which are unrelated to the [appellee's] conversations with Cpl [S]."  AE XIX at 6.

discovery, the doctrine is inapplicable under the facts of this case.[30]

## Conclusion

The appeal of the United States is hereby denied. The military judge's ruling is affirmed and the record of trial is returned to the Judge Advocate General for remand to the convening authority and delivery to the military judge for further proceedings.

Chief Judge MITCHELL and Judge FISCHER concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[30] *See Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more."); *United States v. Fogg*, 52 M.J. 144, 149 (C.A.A.F. 1999). We also note that the second requirement of the plain view doctrine, i.e. that the evidence's "incriminating nature must also be immediately apparent" also appears unmet in light of SA Perez's initial inability to find these additional texts and his testimony that he would not have readily recognized these texts as evidence of sexual assault had he found them during his initial search. *Id.* at 136-37 (internal quotation marks and citations omitted).