UNITED STATES, Appellee,

v.

John V. BATTLES, Storekeeper Seaman Apprentice U.S. Navy, Appellant.

No. 55,126.

NMCM 85 2783.

U.S. Court of Military Appeals.

Sept. 24, 1987.

For Appellant: *Commander J.A. Williams, JAGC, USN* (argued); *Lieutenant Commander Alvin L. McDonald, JAGC, USN* and *Lieutenant Christine M. Hayes, JAGC, USNR.*

For Appellee: *Lieutenant Larry D'Orazio, JAGC, USNR* (argued); *Captain Wendell A. Kjos, JAGC, USN* (on brief); *Captain Carl H. Horst, JAGC, USN.*

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by military judge sitting alone as a general court-martial at Naval Station, Treasure Island, San Francisco, California, in March and April 1985. After mixed pleas, he was found guilty of possession of phenobarbital with intent to distribute, use of phenobarbital, use of marijuana, and receiving stolen property, in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 934, respectively. Appellant was sentenced to a dishonorable discharge, confinement for 2 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved, and Court of Military Review affirmed, the findings of guilty and the sentence.

This Court granted review of both an assigned and specified issue:

I

WHETHER THE UNITED STATES NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED WHEN IT AFFIRMED THE MILITARY JUDGE'S DENIAL OF APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE FOUND DURING AN "INSPECTION" HELD OUTSIDE THE SCOPE OF MIL.R.EVID. 313.

II (SPECIFIED)

WHETHER THE OPERATIONAL REQUIREMENTS OF VESSELS AT SEA CREATE SPECIAL CIRCUMSTANCES REDUCING THE GOVERNMENT'S BURDEN OF PROOF FOR ADMISSIBILITY OF EVIDENCE UNDER MIL. R.EVID. 313.

We hold that the government action challenged in this case was constitutional, and

the drugs discovered were admissible as evidence at appellant's court-martial under Mil.R.Evid. 314(d), Manual for Courts-Martial, United States, 1984.[1] *See* Mil.R.Evid. 314(a). Accordingly, we need not decide whether the Government's burden of proof for inspections on operational vessels can or should be reduced under Mil.R.Evid. 313.

At trial, the parties stipulated to the following facts:

On Sunday, 9 September 1984, both Storekeeper Seaman Apprentice [SKSA] Battles and Seaman [SN] Troy W. Lipmyer were berthed in S-8 berthing on board USS ENTERPRISE. At approximately 0200 that morning the Commanding Officer had ordered to be searched a postal package addressed to SN Lipmyer; when this package was opened, 92 hits of LSD were discovered. Subsequently, at approximately 0300–0400 the Executive Officer ordered a "health and comfort inspection" of S-8 berthing. SKSA Battles and other personnel sleeping in the berthing area were awakened, taken out of the berthing area into a void, searched and then ordered into their working spaces while the "inspection" was being conducted. *During this "inspection" a box bearing SKSA Battles' name was found by a maintenance locker; when this box was opened, phenobarbital and USS ENTERPRISE cigarette lighters were discovered inside.*

The ENTERPRISE executive officer, CAPT Dantone, ordered the "health and comfort inspection;" he testified at SN Lipmyer's court-martial that:

prior to 9 September 1984 "we had several masts that included people from S-8. I had several indicators from informants on the ship that there was a larger amount of drug activity in S-8 than we had throughout the rest of the ship";

"the names Battles and Babb were familiar to me well prior to the discovery of the phenobarbital";

"Battles had been to mast for drug use and I believe Babb had also and I interviewed them personally. So those two prior to this whole time were known to me to ha[ve] at least had involvement in drugs."

(Emphasis added.)

Appellant asserts that the "health and comfort inspection" noted above was no more than a subterfuge search designed to locate evidence for later use in disciplinary proceedings. Mil.R.Evid. 313(b). In support of his contention, he notes the early hour of the inspection, its occurrence 2 hours after discovery of other drugs, the pre-existing suspicions with respect to appellant and his berthing mates, and the executive officer's intent to initiate disciplinary action against anyone violating drug laws. Appellant argues that these facts preclude a finding that a legitimate inspection occurred as defined in Mil.R.Evid. 313(b) and require suppression under Mil.R.Evid. 313(a). *Cf. United States v. Ellis*, 24 M.J. 370 (C.M.A.1987). His argument further implies that this search required probable cause, which was lacking (*New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 749, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring in the judgment)) and was so unreasonable as to otherwise violate the Fourth Amendment. *See generally O'Connor v. Ortega*, — U.S. ——, 107 S.Ct. 1492, 1504–06, 94 L.Ed.2d 714 (1987) (Scalia, J., concurring in the judgment).

The first question we must ask is whether appellant had a reasonable expectation of privacy in berthing area S-8 on the USS ENTERPRISE while this naval vessel was underway in the Pacific Ocean. Appellant

---

1. Mil.R.Evid. 314 provides:

   (d) *Searches of government property.* Government property may be searched under this rule unless the person to whom the property is issued or assigned has a reasonable expectation of privacy therein at the time of the search. Under normal circumstances, a person does not have a reasonable expectation of privacy in government property that is not issued for personal use. Wall or floor lockers in living quarters issued for the purpose of storing personal possessions normally are issued for personal use; but the determination as to whether a person has a reasonable expectation of privacy in government property issued for personal use depends on the facts and circumstances at the time of the search.

shared this berthing area with approximately sixty other crewmembers. The berthing area was subject to a great deal of traffic during shift changes, as well as unit inspections and other operational demands. The box in which drugs were found was not located in the limited storage area assigned to appellant on board this ship but near a maintenance locker in a common space in the berthing area. In this context, we hold that appellant cannot reasonably claim that his expectation of privacy in berthing area S–8 was so great as to bar other naval personnel from accessing its common spaces. *See* Mil.R. Evid. 314(d); *see also United States v. Simmons,* 22 U.S.C.M.A. 288, 292–93, 46 C.M.R. 288, 292–93 (1973).

This type of situation was noted by the Supreme Court in *O'Connor v. Ortega, supra; cf. United States v. Muniz,* 23 M.J. 201 (C.M.A.1987); *United States v. Weshenfelder,* 20 U.S.C.M.A. 416, 421–22, 43 C.M.R. 256, 261–62 (1971). The Supreme Court held that government employees had a limited privacy interest in the workplace. However, a plurality recognized that the scope of this expectation of privacy depended in part on the demands of the workplace and its openness to employees and the public. *O'Connor v. Ortega, supra* 107 S.Ct. at 1498. It further intimated that probable cause to access certain parts of the workplace was not needed. The stated reason was that society was not reasonably prepared to expect privacy for the individual in these circumstances or that searches of these areas were not unreasonable. *Id.* at 1506 (Scalia, J., concurring in the judgment). A berthing area on a naval ship is more like a workplace than a home or barrack's environment. We hold that operational realities and common sense dictate that, at the very least, appellant had no reasonable expectation of privacy in the common spaces of such a berthing area. *See generally United States v. Hessler,* 7 M.J. 9, 10 (C.M.A.1979).

Appellant also had no reasonable expectation of privacy in the box which contained the illegal drugs. *United States v. Ellis,* 24 M.J. at 372 (C.M.A.1987); *cf. O'Connor v. Ortega, supra* at 1497 (plurality opinion). The box, with his name on it, was found in a common area near a maintenance locker, and it was unsealed and open. Its location and unprotected condition lead us to conclude that appellant failed to take reasonable precautions to insure his privacy rights in the contents of the box. As a result, we conclude that appellant relinquished[2] any possible expectation of privacy in this box prior to its examination by the inspection team. *See United States v. Sanford,* 12 M.J. 170, 174–75 (C.M.A.1981); *see also Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

The challenged government action in this case was the entry of the inspection team into the S–8 berthing area; the team's seizure and examination of a box found in a common area; and its seizure of the box's contents. Whether such government action might be considered constitutional as a legitimate administrative inspection in light of the holding of the Supreme Court in *New York v. Burger,* — U.S. ——, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), need not be decided today. Moreover, whether Mil. R.Evid. 313(b) is constitutional in light of the particular requirements of that decision is also a question for a later time. *See* S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 245 (2d ed. 1986). Our holding today is simply that none of appellant's rights were violated by the government action challenged in this case.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COX, Judge (concurring):

I concur. *See* my separate opinion in *United States v. Moore,* 23 M.J. 295, 299 (C.M.A.1987).

---

**2.** Appellant asserted later in his trial that, prior to this inspection he had collapsed this box and thrown it in the trash.