UNITED STATES, Appellee,

v.

Steven R. BRESEMAN, Commander,
U.S. Coast Guard Reserve,
Appellant.

No. 55,154.
CG Dkt. No. 874.

U.S. Court of Military Appeals.

Sept. 19, 1988.

For Appellant: *Lieutenant Commander
Robert Bruce* (argued).

For Appellee: *Lieutenant Commander
Arthur R. Butler* (argued); *Lieutenant
Commander T.J. Donlon.*

*Opinion of the Court*

COX, Judge:

Appellant stands convicted of six specifications of conduct unbecoming an officer as a result of his conduct toward two enlisted female members of the United States Coast Guard, in violation of Article 133, Uniform Code of Military Justice, 10 U.S.C. § 933. His sentence as approved below extends to a dismissal. We agreed to consider twenty issues raised by appellant and a specified issue. 24 M.J. 326 (1987). We have considered all of appellant's contentions, both as noted in his brief and as presented in the excellent oral argument of his appellate counsel. We are satisfied that appellant has received a fair trial and that no error materially prejudicing a substantial right of appellant has been committed. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

The Court of Military Review summed up the case against appellant as follows:

[A]ppellant comes before this Court with approved convictions involving two junior enlisted women of the command over which he exercised authority as executive officer. In the first specification, Commander Breseman has been found guilty of making "sexual advances" to a seaman apprentice (E–2) in his office while she was working after hours in the duty section. The remaining five of-

fenses involve actions with a female fireman (E–3), also a member of his command. These acts occurred in various places over a period of four months. One specification relates to deportment at the Support Center "All-Hands Club," where Commander Breseman, in uniform in the presence of subordinates, allowed the fireman to sit on his lap and then made certain sexually suggestive remarks to her. In the next specification Commander Breseman was found to have made sexual advances to this young woman at various times while teaching her to drive and, again, at the "All-Hands Club." Another offense occurred in his room aboard the Support Center where he photographed the fireman in various poses of undress, resulting in pictures of her nude from the waist up and nude in the pelvic and buttock areas. Later, in a separate offense, Commander Breseman showed this woman the photographs and asked her to pose again and, subsequently, as found in the last specification, he confronted her and said among other things, "I could throw your pictures around and hurt you."

21 M.J. 973, 975–76 (1986).

Notwithstanding the numerous issues raised by appellant and considered by us, we discuss only the issues relating to the search of appellant's desk at his official place of work and his assigned quarters (BOQ) on board the support command.

On September 9, 1983, based upon information provided by a special agent of Coast Guard Intelligence, appellant's commanding officer issued a search authorization permitting the search of a government-owned desk provided appellant at his work place. The authorization was based upon the commander's interview of the agent, examination of an affidavit furnished by the agent, and other evidence available to him that a female enlisted member of his command complained that appellant had indecently assaulted her, was sexually harassing her, and in particular had been showing photographs of her around the office. It was further reported to the commander that appellant had been seen placing photographs in the desk.

Pursuant to the warrant, the agent searched the desk and seized a number of prints and negatives. Thereafter, on September 13, a search of appellant's BOQ was authorized. The basis for that authorization is best shown by the commander's testimony, as follows:

Q. Can you tell the judge why you authorized the search and in some detail as to why you formed the belief that you've testified to?
A. Well, the testimony that was given to me by Agent Stephens indicated that photographs had been taken of Fireman Simmons in various states of undress in the BOQ room of Commander Breseman. Also the testimony he had received and which he had told me indicated that Fireman Simmons had been brought back up to that BOQ room at a subsequent date to view the photographs. And also I was advised by Agent Stephens that Commander Breseman had indicated that he was going to keep these photographs, that he indeed could, and I'm paraphrasing, that he could use the photographs against her at some later date.
Q. Did Agent Stephens indicate who Commander Breseman communicated those words to?
A. He communicated them to FN Simmons.
Q. Go ahead—
A. Well, the idea that photographs were taken of a female enlisted person at the Support Center in various states of undress in the BOQ room; the fact that they were subsequently developed and the young lady was brought back to the room to see them; the fact that she was told that these photographs were going to be kept, indicated to me that the photographs were still in existence; that they were—they would not be found in a place that was subject to Commander Breseman's family finding them which would be his home or his automobile; they weren't found in his desk in a previous search, led me to believe that there was a very good reason in my mind that the photographs of Simmons would be found there, in the BOQ room.

Pursuant to the search authorization, the BOQ was searched and numerous photographs, photographic equipment, books, magazines, and articles of clothing were seized. Appellant now complains that the information given to the commanding officer did not establish probable cause for the search of his BOQ and, in any event, the seizure far exceed anything authorized.

Mil.R.Evid. 315, Manual for Courts-Martial, United States, 1969 (Revised edition), establishes guidelines for conducting searches requiring probable cause. "An 'authorization to search' is" defined as "an express permission ... issued by competent military authority to search a person or an area for specific property or evidence ... and to seize such property, [or] evidence ..." Mil.R.Evid. 315(b)(1). It is distinguished from a "search warrant" in that a warrant is issued by civilian authority. Mil.R.Evid. 315(b)(2).

"Probable cause" is defined as "a reasonable belief that the person, property, or evidence sought is located in the place ... to be searched." Mil.R.Evid. 315(f)(2).

■ Our review of the record indicates that the commanding officer and the special agent scrupulously adhered to the rules provided in Mil.R.Evid. 315. We are also satisfied that application of the rules to appellant under the facts and circumstances of this case does not require suppression of the evidence.

■ Appellant next questions the extent of the search, claiming that the search authorization was narrowly limited to photographs of two complaining witnesses, whereas the seizure was of many other items not particularly described in the authorization. Although his factual assertion is correct, his legal conclusion is not. Mil. R.Evid. 316 establishes the rules for seizures; Mil.R.Evid. 316(d)(4) provides that "[p]roperty or evidence ... may be seized for use in evidence by any person ... if" it is in plain view. We are satisfied that the evidence was in plain view, that the agent was lawfully about the premises conducting the authorized search, and that the evidence could be lawfully seized. *United*

*States v. Wisniewski,* 21 M.J. 370 (C.M.A.), *cert. denied,* 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986).

Regardless of the extent of appellant's constitutional rights under the Fourth Amendment or whether he enjoyed a right of privacy in his assigned desk or in the BOQ, compliance with the Military Rules of Evidence vindicated and protected his rights. *See United States v. Moore,* 23 M.J. 295, 299–300 (C.M.A.1987) (Cox, J., concurring in the result); *United States v. Muniz,* 23 M.J. 201 (C.M.A.1987); *United States v. Stuckey,* 10 M.J. 347 (C.M.A. 1981).

The decision of the United States Coast Guard of Military Review is affirmed.

EVERETT, Chief Judge (concurring):

In the supplement to his petition for grant of review appellant assigned 20 errors. Having reviewed them thoroughly, I share Judge Cox' view that Breseman received a fair trial and that he was not materially prejudiced by any error.

I conclude that the commanding officer had probable cause to authorize a search of appellant's desk and his BOQ room and that he authorized a search in compliance with the Military Rules of Evidence and the Fourth Amendment. Thus, like the principal opinion, I have not tried to determine whether, under *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), appellant had retained any expectation of privacy in the contents of the desk.

SULLIVAN, Judge (concurring in the result):

I agree with Judge Cox that this case should be affirmed. However, on the search and seizure question, I rest my conclusion on the opinions of the various Justices of the Supreme Court in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 702 (1983), and *Washington v. Chrisman,* 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982). It is a question of law whether a particular Manual provision or evidentiary rule complies with the Code or the Constitution. *See United States v. Battles,* 25 M.J. 58, 60 (C.M.A.1987).