**UNITED STATES, Appellee,**

v.

**Staff Sergeant Robert F. BAKER, 228–86–8263, United States Army, Appellant.**

**ACMR 8801525.**

U.S. Army Court of Military Review.

9 June 1989.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Brian D. DiGiacomo, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Martin D. Carpenter, JAGC, Lieutenant Colonel Richard Gallivan, JAGC USAR, Captain Jody M. Prescott, JAGC (on brief).

Before HOLDAWAY, CARMICHAEL and GIUNTINI, Appellate Military Judges.

## OPINION OF THE COURT

HOLDAWAY, Chief Judge:

The appellant was found guilty at a special court-martial of larceny from the Fort Lewis Post Exchange and disorderly conduct. He was sentenced to a bad-conduct discharge and reduction to Private E1. The sentence was approved by the convening authority.

The appellant now raises several issues in his brief and others personally, in his request for appellate review. One issue warrants discussion. At trial, the appellant moved to suppress the fruits of what he terms an illegal search and seizure by the store detective. The trial judge denied this motion, finding that the store detective, a civilian employed by the Post Exchange for security purposes, was not a law enforcement official, was not part of the law enforcement mechanism of the Army's disciplinary authorities, and that, within the context of her employment, her actions were analogous to a "private" search and not subject to fourth amendment strictures. It is that ruling, in light of *United States v. Quillen*, 27 M.J. 312 (C.M.A.1988), that is in issue.

In *Quillen*, the Court of Military Appeals ruled that a store "detective" at a post exchange (interestingly enough the same individual involved in this case) was a government official within the meaning of Article 31(b), Uniform Code of Military Justice, 10 U.S.C. § 831(b) [hereinafter UCMJ]. Thus, oral admissions made to the store detective without a proper warning should have been excluded.[1] Appellant argues that the rationale that applies in an Article 31, UCMJ, context also is applicable, *mutatis mutandis*, to a fourth amendment search and seizure issue. We need not decide that issue in this case as we are satisfied that, even if the store detective effected a search and seizure, under the circumstances, the appellant had no reasonable expectation of privacy. *See* Mil.R.

---

1. Appellant raises the Article 31, UCMJ, issue in this case also. However, at trial no objection was made to the then so-called "admissions." *See* Manual for Courts–Martial, United States, 1984, Military Rules of Evidence 304(a) [hereinafter Mil.R.Evid. 304(a)]. We, therefore, find waiver of any Article 31, UCMJ, rights that may have existed.

Evid. 311(a)(2); *United States v. Pansoy,* 11 M.J. 811 (A.F.C.M.R.1981) (accused had no reasonable expectation of privacy in boxes of merchandise searched by store detective). A recital of the facts will illustrate this conclusion.

The appellant entered the store with a large cardboard box that was open at the top with a piece of tape attached perpendicularly to the top flaps. The appellant characterizes this as a sealed box; it most emphatically was not. Sealed, in a dictionary sense, means tightly or completely closed or secured. The top of this box could easily be opened by simply detaching the loosely attached tape and opening the loose flaps. In point of fact, the appellant was seen by two different individuals doing just that; he, on two occasions, detached the tape, opened the flaps and tried to insert another box into the larger box. On failing this, he simply reattached the tape. Not unnaturally, this aroused suspicions on the part of the detective who arranged for appellant to pass through the check-out counter without having the contents of the box inspected. After appellant went through the check-out procedure but was still on the premises, he was stopped by the detective, who ultimately did examine the contents of the box and found stereo components that the appellant was attempting to carry from the store.[2]

The penumbra of privacy, or expectation thereof, that the fourth amendment seeks to protect is variable. It ranges from the privacy of one's home to open fields or, in the case before us, from sealed and wrapped packages to such things as, say, open carts or shopping bags. The permutations in between are many and varied. We have little trouble in this case in finding that no reasonable person should expect to carry a large box with easily opened flaps into a store, walk about, place items in the box, and then have its contents remain inviolate. That would be ludicrous; such a short-sighted rule would be tantamount to a license to steal. We will rigor-

ously protect the right of soldiers to be secure in those areas where they have a legitimate expectation of privacy. In the name of privacy, we will not erect barriers that would preclude our Army and Air Force Exchange Service from protecting itself.

Turning to the disorderly conduct, we will not summarize the evidence that supported this charge. Suffice it to say we are not satisfied beyond a reasonable doubt that, under the circumstances, the facts are sufficient to support the findings.

Accordingly, we affirm the finding of guilty as to larceny (the Specification of Charge I and Charge I), reverse the finding as to disorderly conduct (the Specification of Charge II and Charge II), and dismiss the latter specification and charge. Reassessing the sentence based on the correct findings, we affirm.

Judge CARMICHAEL and Judge GIUNTINI concur.

---

**2.** Appellant apparently neither granted nor denied permission to look into the box. In fact, after he had been removed to the manager's office, he twice disclaimed ownership of the box. In view of our disposition of the case, we need not consider the theory of abandonment. *See United States v. Sanford,* 12 M.J. 170 (C.M.A. 1981).