UNITED STATES, Appellee,

v.

Robert F. BAKER, Staff Sergeant, U.S. Army, Appellant.

No. 63,020.
CM 8801525.

United States Court of Military Appeals.

Argued April 5, 1990.

Decided August 1, 1990.

For Appellant: *Captain Gregory A. Gross* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Jeffrey J. Fleming* (on brief); *Captain Keith W. Sickendick* and *Captain Jon W. Stentz.*

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Denise J. Arn* (on brief); *Captain Martin D. Carpenter.*

## Opinion of the Court

EVERETT, Chief Judge:

A special court-martial composed of officer and enlisted members tried Staff Sergeant Baker at Fort Lewis, Washington. Contrary to his pleas, he was convicted of charges that on April 22, 1988, he had stolen two stereo components worth $510 from the Army and Air Force Exchange Service and that he had been disorderly, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. He was sentenced to a bad-conduct discharge and reduction to Private E-1. The sentence was approved by the convening authority. The Court of Military Review affirmed the larceny conviction but set aside the conviction for disorderly conduct and dismissed that charge. Upon reassessment, the court affirmed the sentence. 28 MJ 902 (1989).

In turn, upon appellant's petition, we granted review of these three issues:

### I

WHETHER THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE MOTION TO SUPPRESS PROSECUTION EXHIBITS 1–4 AND BY RULING THAT THE SEARCH BY A STORE DETECTIVE OF THE POST EXCHANGE WAS A "PRIVATE" SEARCH IN LIGHT OF *UNITED STATES V. QUILLEN,* 27 MJ 312 (CMA 1988).

### II

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE STATEMENTS GIVEN BY APPELLANT TO A STORE DETECTIVE OF THE POST EXCHANGE WHEN THE DETECTIVE DID NOT ADVISE APPELLANT OF EITHER HIS ARTICLE 31 OR HIS *TEMPIA*[1] RIGHTS. SEE *UNITED STATES V. QUILLEN,* 27 MJ 312 (CMA 1988).

### III

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN HOLDING THAT APPELLANT HAD NO REASONABLE EXPECTATION OF PRIVACY IN AN OPAQUE CONTAINER WHICH WAS TAPED SHUT.

### I

Before pleading, the defense moved to suppress a box containing the two stereo components which were the subject of the larceny charge and claimed that this evidence was the product of an illegal search. Only one witness testified on this motion—Mrs. Mary Holmes, who was called by the prosecution. On April 22, 1988, she had been working "as an exchange detective" for the Army and Air Force Exchange System (AAFES) at Fort Lewis, Washington. When she

first saw Sergeant Baker, he had a shopping cart which contained one huge like packing box, brown packing box, ... and he was strolling from the stereo area by

1. *United States v. Tempia,* 16 USCMA 629, 37 CMR 249 (1967).

stationery and heading up towards the cashier's cage and the brown box was on top of the shopping cart, and then he had a stereo item on the very bottom of the shopping cart and was just pushing it down the aisle.

Mrs. Holmes followed him around and noticed Baker had went over into the boy's area and pushed his shopping cart in between two racks of children's—little boy's jeans. And he proceeded to take the brown box off the top of the shopping cart and open it up and then take the stereo item from underneath the shopping cart and tried to stick it inside this brown box, but the stereo item wouldn't fit. So, he put the stereo item back onto the bottom of the shopping cart and then he closed the big box back up and ran his hand over the tape that was on top of it and picked it up ... and put it on top of the shopping cart again.

Subsequently, Baker repeated his effort to put the stereo item into the box; but again he was unsuccessful. "[T]hen he took the stereo item and laid it kind of on the carpet and then he taped back up the brown box and placed it back on top of the shopping cart and instead of putting the stereo item back underneath the shopping cart, he placed it underneath" some clothing. Thereafter, he again placed the stereo item back in the cart; but, finally he "put it back on the shelf where all the like items were, and then he turned around and left out of the area and at [that] time I went, and kind of waited for him to come out on the mall."

After appellant had gone "through the central check out area and came out through the two main doors" into a mall area, Mrs. Holmes approached Baker and identified herself as an exchange detective. After telling him that she wished to "do a parcel ... check of different items to make sure" the "cashiers with our new system in have properly rung up the merchandise," Mrs. Holmes told Baker, "I would like to check his package. And he handed me a small brown bag and I said, 'No,' I said, 'I'd like to check this big brown one here if I can.'" Baker claimed that it only contained his "wife's clothing," whereupon Mrs. Holmes asked him to go with her and two other exchange employees back into the store.

As they proceeded back to an office, Baker became "belligerent." Ultimately, "a brawl" ensued as Mrs. Holmes enlisted the aid of others to get appellant back into an office. As she opened up the box, he explained, "That box doesn't belong to me. I've never seen it before." Mrs. Holmes "just ignored him ... and called the military police."

Baker was not wearing a uniform; and Mrs. Holmes did not know "if he was active duty military." She looked into the box "[b]ecause he had tried to conceal the stereo item inside that box, and I figured if he had tried to put one, then maybe there might be other items in there of the same likeness, because the stereo items come in a complete unit." She had not seen Baker when he had first come into the store, and she did not know how long he had been there at that time.

Mrs. Holmes testified that, according to the guidelines provided her,

we are just a detaining unit. We have no authority to apprehend—as a matter of fact, even when we go out on the mall and ask, and after we identify ourselves and ask for their ID card, they do not need to give it to us. They do not need to come with us. They can turn around and walk out the door and just act like we aren't even there. We have no authority whatsoever.

Mrs. Holmes maintained that, as an exchange detective, she had no more "authority than any other store employee" and no more "than any other private citizen that would be in the area."

Mrs. Holmes identified the "big brown box" that Baker had been carrying in the shopping cart and the box containing stereo components worth $510 which were inside the brown box. On examination by the military judge, she testified that the box on Baker's shopping cart did "not appear to be an Army and Air Force Ex-

change Service type of packaging." When "a customer brings a box into the exchange from outside," an "ID checker would" have affixed "an AAFES security thank you sticker," with the date and the initials of the checker; and such a sticker was on appellant's box.

The military judge found that, "as a store detective," Mrs. Holmes had as "her main purpose ... to protect the exchange system and safeguard its customers from pilferage." However, she had "no power to arrest or apprehend. Her duties are not related to direct law enforcement and she does not represent the commander's punitive or disciplinary power." Most importantly, the judge found that her "actions constituted a private search conducted by a person who was not an agent of the government, therefore, the provisions of Military Rule of Evidence 311, and the Fourth Amendment were not triggered by her actions on 22 April 1988." Accordingly, the motion to suppress was denied.

The Government subsequently called Mrs. Holmes and two other post-exchange employees to testify on the merits; and their description of events conformed substantially to that given in connection with the motion to suppress. Appellant's defense was that he had been so intoxicated on April 22 that he did not remember the incident at the post exchange and that he did not have a felonious intent.

## II

### A

■ The Fourth Amendment is a restriction only against government action; and the fruits of a search and seizure by a private person are not subject to the exclusionary rule. *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *United States v. Volante*, 4 USCMA 689, 16 CMR 263 (1954). Since the military judge found that Mrs. Holmes had been acting as a private person, he concluded that the Fourth Amendment did not apply to her search of Baker's box.

However, in *United States v. Quillen*, 27 MJ 312 (CMA 1988), we determined that a store detective—indeed, the same Mrs. Holmes involved in the present case—had been acting "as an instrument of the military," *id.* at 314 (footnote omitted), when she interrogated a suspect about a shoplifting incident. As we observed there, "post exchanges ... are arms of the government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, [and] share in fulfilling the duties entrusted to it ..." *Id.* at 314, quoting *Standard Oil Co. of California v. Johnson*, 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611 (1942).

■ Military authorities controlled the Army and Air Force Exchange Service and the local post exchange at Fort Lewis. Accordingly—just as in *Quillen*—Mrs. Holmes' "position as a store detective at a base exchange was not private, but governmental in nature and military in purpose." 27 MJ at 314 (footnote omitted).

According to her own testimony, Mrs. Holmes was authorized only "to detain" and not "to apprehend" and had no "more authority than any other private citizen that would be in the area." Therefore, she may not have been an "investigative or law enforcement officer[ ]" under the Federal Tort Claims Act, so the United States might not be liable if she committed an "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 USC § 2680(h).

■ However, the protection of the Fourth Amendment is not limited to searches and seizures by investigators or law-enforcement personnel. It also extends to searches and seizures performed by many other governmental officials. *See, e.g., Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (building inspector); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (fire department); *Co-*

lonnade Catering Corporation v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (inspection under liquor laws); Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (Occupational Safety & Health Act (OSHA) inspections); Michigan v. Tyler, 436 U.S. 499, 98 S.Ct.1942, 56 L.Ed.2d 486 (1978) (inspection for cause of fire). We conclude that—in light of Quillen, which was decided after the trial of this case—the military judge erred in concluding that the search by Mrs. Holmes was made by a private person. This, however, is only the beginning of the inquiry.

B

■ No Fourth Amendment protection is granted unless the person claiming it had a reasonable expectation of privacy. Thus, open fields are unprotected by the Fourth Amendment even if enclosed by fences, because there is no reasonable expectation of privacy in an open field. Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); see California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); cf. Florida v. Riley, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989). Likewise, there is no expectation of privacy in bank records, checks, and other negotiable instruments, United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); or in the telephone numbers which one calls, Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). There is no expectation of privacy in the movement of a car on a highway, so that warrantless use of a beeper to trace the car does not violate the Fourth Amendment. United States v. Knotts, 460 U.S. 276, 103

S.Ct. 1081, 75 L.Ed.2d 55 (1984). A prisoner has no reasonable expectation of privacy in his cell and so enjoys no Fourth Amendment protection there. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Supreme Court has held that even a dog's sniffing around someone's baggage to discover drugs does not violate any privacy expectation and is not a search under the Fourth Amendment. United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

The Court of Military Review applied a similar rationale in upholding the military judge's denial of the defense motion to suppress. In its view, Baker had no reasonable expectation of privacy because "no reasonable person should expect to carry a large box with easily opened flaps into a store, walk about, place items in the box, and then have its contents remain inviolate." 28 MJ at 903.

■ We agree generally with the conclusion of the court below; and certainly we recognize that if a person's actions make clear that he has no reasonable expectation of privacy, then he is not entitled to avail himself of Fourth Amendment protections. Cf. United States v. Burnette, 29 MJ 473 (CMA 1990). However, it may be worthwhile to spell out our reasoning in some detail.

■ By entering a post exchange to shop, a person does not automatically forfeit Fourth Amendment protection and become subject to inspection of his purse or wallet. This is particularly true when no sign or notice is posted to inform the customer that his belongings may be searched at the will of store detectives [2] and when, unlike the situation with some public buildings,[3] no published regulations give notice

---

**2.** Prior notice is a factor relevant to the reasonableness of a search and tends to reduce the intrusion on privacy occasioned by the search. See National Treasury Employees Union v. Von Raab, 489 U.S. 656 n. 2, 109 S.Ct. 1384, 1394 n. 2, 103 L.Ed.2d 685, 706 n. 2 (1989).

**3.** See, e.g., 36 C.F.R. § 1280.6 (inspection of "[p]ackages, briefcases, and other containers brought into, while on, or being removed from

the" National Archives); 36 C.F.R. § 702.10 (inspection of all "suitcases, briefcases, large envelopes, [and] packages" of patrons of the Library of Congress); 36 C.F.R. § 520.3 (inspection of parcels, bags, and other containers "prior to removal from the" National Zoo); 36 C.F.R. § 504.3 (inspection of parcels, bags, and other containers "prior to removal from the" Smithsonian Institution).

that the parcels of patrons may be inspected.

 Although we conclude that the customer entering a post exchange or other government operated store has a privacy interest which entitles him to Fourth Amendment protection, we also recognize that the Fourth Amendment only safeguards against "unreasonable searches and seizures." *See United States v. Middleton*, 10 MJ 123, 127 (CMA 1981). Moreover, not every search or seizure is unreasonable because it is performed without a warrant or with less than probable cause. *See, e.g., New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (search of high school student); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stop and frisk).

 In determining which warrantless searches and seizures are reasonable, the scope of expectations of privacy is again a major factor to be considered. Thus, in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), one of the reasons advanced for allowing automobile searches without a warrant was that a lesser expectation of privacy exists in a motor vehicle than in a private home. Likewise, a partial justification for upholding a warrantless search of an automobile junkyard under authority of a state statute was that a reduced expectation of privacy exists in such a "closely regulated" industry. *New York v. Burger*, 482 U.S. 691, 700, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987). *Cf. Skinner v. Railway Labor Executives' Assn*, 489 U.S. 602, ——, 109 S.Ct. 1402, 1418–19, 103 L.Ed.2d 639, 666–67 (1989) (urine test of railway employees).

In *United States v. Battles*, 25 MJ 58 (CMA 1987), this Court considered whether a sailor "had a reasonable expectation of privacy in [a] berthing area ... on the USS ENTERPRISE" where it "was underway in the Pacific Ocean." *Id.* at 59. We held "that appellant cannot reasonably claim that his expectation of privacy in berthing area S–8 was so great as to bar other naval

personnel from accessing its common spaces." *Id.* at 60.

As Judge Sullivan went on to explain:
This type of situation was noted by the Supreme Court in *O'Connor v. Ortega*, *supra* [480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) ]; *cf. United States v. Muniz*, 23 MJ 201 (CMA 1987); *United States v. Weshenfelder*, 20 USCMA 416, 421–22, 43 CMR 256, 261–62 (1971). The Supreme Court held that government employees had a limited privacy interest in the workplace. However, a plurality recognized that the scope of this expectation of privacy depended in part on the demands of the workplace and its openness to employees and the public. *O'Connor v. Ortega*, 107 S.Ct. at 1498. It further intimated that probable cause to access certain parts of the workplace was not needed. The stated reason was that society was not reasonably prepared to expect privacy for the individual in these circumstances or that searches of these areas were not unreasonable. *Id.* at 1506 (Scalia, J., concurring in the judgment).
25 MJ at 60.

 These precedents lead us to conclude that the search and seizure of Baker's brown box, as well as his physical detention, were "reasonable" for purposes of the Fourth Amendment. In our view, a person who brings a big box into a post exchange and opens it in a furtive or surreptitious manner has a reduced expectation of privacy in comparison with a customer who walks through the exchange with a sealed box or closed purse. Furthermore, whatever might have been Baker's subjective expectation of privacy, the reasonableness of that expectation must also be considered.

 The reasonableness of expectations of privacy in a society hinges on its institutions and laws. Therefore, in gauging the reasonableness of any expectation of privacy entertained by Baker, we cannot ignore the numerous statutes—including those in the state of Washington, where Fort Lewis is located—which authorize merchants to

search or detain shoplifters.[4] These laws embody a legislative judgment—and a judgment by society—that merchants are entitled to protect themselves against shoplifting by those who enter their stores. In light of the prevalence of such statutes, Baker could not reasonably have expected to walk out of a private store without having his box inspected when, as here, his actions gave reason to believe that he was engaged in shoplifting. The circumstance that he was leaving a post exchange—which is government operated—rather than a private store did not warrant any greater expectation of privacy on his part with respect to such an inspection.

The rationale that sustains the inspection of the box applies equally to the other actions of the post exchange detectives. If the inspection was reasonable, the detectives were entitled to detain Baker for the short period of time necessary to accomplish a reasonable inspection of the box. Even though this represented a "seizure" of his person, the brevity of the detention and the minimal intrusion on his privacy made the seizure reasonable. *Cf. Terry v. Ohio, supra.* Furthermore, to whatever extent Baker resisted the reasonable detention, the exchange personnel were entitled to use reasonable, non-lethal force to overcome his resistance.

## C

■ Staff Sergeant Baker's actions, as described by Mrs. Holmes, may well have given her probable cause to believe that he was engaged in shoplifting. Even though she had no official authority to arrest, Mrs. Holmes would have possessed at least the same authority which a private citizen in the State of Washington would have possessed under similar circumstances. "We believe, however, that in absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity. By one of the earliest acts of Congress, the principle of which is still retained, the arrest by judicial process for a federal offense must be 'agreeably to the usual mode of *process* against offenders in such state.'" *United States v. Di Re*, 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210, 217–18 (1948) (emphasis added; footnote omitted).[5] If, under state law,[6] shoplifting constitutes a felony and a private citizen possesses the authority to arrest for a felony committed in that person's presence, an exchange detective would have at least as much authority and

---

4. States authorize merchants to detain persons whom they reasonably believe may have taken or attempted to steal merchandise. *See, e.g.,* Wash.Rev.Code § 9A–16.080 (West 1988); Ariz. Rev.Stat.Ann. § 13–1805 (West 1989); Ark.Code Ann. § 5–36–116 (1987); Cal.Penal Code Ann. § 490.5 (West 1988 & Supp.1990); Conn.Gen. Stat. § 53a–119a (West 1985); Del.Code Ann., Tit. 11, § 840 (West 1987); Fla.Stat. § 812.015 (West Supp.1990); Ga.Code Ann. § 51–7–60 (Michie 1982); Idaho Code § 48 704 (1974); Ill.Rev. Stat., ch. 38, para. 16A–5 (Smith–Hurd 1977 & Supp.1989); Ind.Code § 35–33–6–2 (1988); Iowa Code § 808.12 (West 1979 & Supp.1990); Ky. Rev.Stat.Ann. § 433.236 (Michie/Bobbs–Merrill 1985); La.Code Crim.Proc.Ann., Art. 215 (West 1967 & Supp.1990); Me.Rev.Stat.Ann., Tit. 17, § 3521 (West 1983 & Supp.1989); Md.Cts. & Jud.Proc.Code Ann. § 5–307 (1988); Mo.Rev. Stat. § 537.125 (Vernon 1988); Nev.Rev.Stat. § 598.030 (Michie 1986); N.J.Stat.Ann. § 2C:20–11 (West 1982); N.M.Stat.Ann. § 30–16–23 (Michie 1989); N.Y.Gen.Bus.Law § 218 (McKinney 1988); N.C.Gen.Stat. § 14–71.1 (Michie 1989); Ohio Rev.Code Ann. § 2935.041 (Page 1987); Okla.Stat., Tit. 22,

§ 1343 (West 1986); R.I.Gen.Laws § 11–41–21 (1981 & Supp.1989); S.C.Code Ann. § 16–13–140 (1976); S.D.Codified Laws § 22–30A–19.2 (Michie Supp.1990); Tenn.Code Ann. § 40–7–116 (Michie 1982 & Supp.1989); Utah Code Ann. § 77–7–12 (Michie Supp.1990); Va.Code § 18.2–105 (Michie 1988); W.Va.Code § 61–3A–4 (Michie 1989); *see also Construction and Effect, in False Imprisonment Action, of Statute Providing for Detention of Suspected Shoplifters,* 47 A.L.R. 3d 998 (1973 & Supp. 1989).

5. *See also United States v. Coplon,* 185 F.2d 629, 633–34 (2d Cir., 1950), *cert. denied,* 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952); *Coplon v. United States,* 191 F.2d 749, 753–54 (D.C.Cir. 1951), *cert. by U.S. denied,* 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952); *United States v. Jones,* 204 F.2d 745, 750–52 (7th Cir.), *cert. denied,* 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368 (1953); and *United States v. Burgos,* 269 F.2d 763, 764–67 (2d Cir.1959), *cert. denied,* 362 U.S. 942, 80 S.Ct. 808, 4 L.Ed.2d 771 (1960).

6. Wash.Rev.Code § 9A 16.080 (West 1988).

could search incident to the arrest. However, since this rationale has not been relied on by the Government, we need not determine whether it would be applicable to this case.

### III

■ Appellant complains about admission of some of his comments to Mrs. Holmes—such as when he said that the box contained his "wife's clothing" or, subsequently, when he denied ownership of the box. However, at trial no objection on any ground was made to admission of these comments in evidence. Since the search and seizure of the box were reasonable, appellant cannot argue that his statements were the product of a Fourth Amendment violation.

■ Moreover, it is doubtful that Baker was interrogated or requested to make a statement within the meaning of Article 31(b), UCMJ, 10 USC § 831(b); and, even if this occurred, any objection for that reason was waived. *See* Mil.R.Evid. 103(a)(1), Manual for Courts–Martial, United States, 1984. We see little cause to relieve appellant from any waiver and to find plain error, because it seems likely that trial defense counsel wanted the factfinder to hear what Baker had said, in order to argue that his remarks showed that he was highly intoxicated at the time—the primary defense on which appellant relied at trial. Finally, even if Baker's statements should have been excluded, their admission was harmless error in light of the other evidence against him.

### IV

The decision of the United States Army Court of Military Review is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring in the result):

I concur in the result. *See United States v. Quillen*, 27 MJ 312, 315 (CMA 1988) (Cox, J., dissenting).